[Cite as *State v. Barnett*, 2026-Ohio-1604.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BROWN COUNTY

STATE OF OHIO,                              :

    Appellee,                              :
                            CASE NO. CA2025-04-005

vs.                                         :
                           <u>OPINION AND
                           JUDGMENT ENTRY</u>
BRIAN CONLEY BARNETT,                        :
                           5/4/2026

    Appellant.                             :

                                   :

CRIMINAL APPEAL FROM BROWN COUNTY COURT OF COMMON PLEAS
Case No. CRI2024-2063

Zachary A. Corbin, Brown County Prosecuting Attorney, and Mary McMullen, Assistant Prosecutor, for appellee.

Patrick Clark, Brown County Public Defender, and Russell Patterson, Assistant Public Defender, for appellant.

## **O P I N I O N**

**M. POWELL, J.**

{¶ 1} Brian Conley Barnett appeals his convictions for involuntary manslaughter and trafficking in fentanyl. For the following reasons, we affirm.

## I. Factual and Procedural Background

{¶ 2}   In April 2024, a neighbor discovered Vickie Compton and Darrell Nease dead in their bedroom. Police officers found drugs and paraphernalia near the bodies. Autopsies determined that both victims died from mixed-drug overdoses.

{¶ 3}   Barnett was charged in an 11-count indictment with, among other offenses, two counts of involuntary manslaughter and one count each of trafficking in fentanyl and illegal conveyance of drugs. The involuntary manslaughter counts alleged that Barnett caused the deaths of Compton and Nease "as a proximate result of [Barnett] committing or attempting to commit the felony offense of Corrupting Another with Drugs . . . and/or Trafficking in Drugs." Both involuntary manslaughter counts cited R.C. 2903.04(A), the substantive provision, and R.C. 2903.04(C), the penalty provision specifying that "[v]iolation of division (A) . . . is a felony of the first degree."

{¶ 4}   At trial, the State presented evidence, including text messages, establishing that Compton had agreed to travel to and meet with Barnett to purchase drugs shortly before she was found dead with Nease. The trial court instructed the jury on the elements of first-degree involuntary manslaughter under R.C. 2903.04(A), explaining that conviction required proof that Barnett "did cause the death of [the victim] and such death was the proximate result of Brian Barnett committing or attempting to commit the felony offense of Corrupting Another with Drugs, in violation of 2925.02(A)(3), and/or Trafficking in Drugs, in violation of 2925.03(A)(1)."

{¶ 5}   The jury returned guilty verdicts on both involuntary-manslaughter counts and the trafficking count, among others. The verdict form for Count One, concerning the death of Nease, stated: "We the Jury, in the issue joined, find Brian Conley Barnett guilty of Involuntary Manslaughter, in violation of R.C. §2903.04(A) of the Ohio Revised Code as charged in Count One of the Indictment." The verdict form for Count Two, concerning

the death of Compton, contained different language: "We the Jury, in the issue joined, find Brian Conley Barnett guilty of Involuntary Manslaughter, in violation of R.C. §2903.04(C) of the Ohio Revised Code as charged in Count Two of the Indictment." Thus, whereas the verdict form for Count One cited R.C. 2903.04(A), the substantive provision, the verdict form for Count Two cited only R.C. 2903.04(C), the penalty provision.

{¶ 6} Neither party objected to the verdict forms at trial. The trial court found that the involuntary-manslaughter counts did not merge with the trafficking count and sentenced Barnett to consecutive prison terms totaling 16 to 19 years.

{¶ 7} Barnett appealed.

## II. Analysis

{¶ 8} Barnett raises two assignments of error. First, he contends that the trial court erred by convicting him of first-degree involuntary manslaughter on Count Two. Second, Barnett argues that his convictions for involuntary manslaughter and trafficking in fentanyl should have merged for sentencing purposes.

## A. Degree of Involuntary Manslaughter

{¶ 9} The first assignment of error alleges:

> BECAUSE THE VERDICT FORM FOR COUNT TWO FOUND MR. BARNETT GUILTY OF ONLY THIRD-DEGREE INVOLUNTARY MANSLAUGHTER, THE TRIAL COURT ERRED BY CONVICTING HIM OF FIRST-DEGREE INVOLUNTARY MANSLAUGHTER.

{¶ 10} In his first assignment of error, Barnett contends that the trial court erred by convicting him of first-degree involuntary manslaughter for Count Two when the jury-verdict form cited only the penalty provision of the involuntary-manslaughter statute. Barnett argues that because the verdict form failed to state either the degree of the offense or that an additional element was present, R.C. 2945.75(A)(2) required the trial court to treat the verdict as a finding of guilt for only third-degree involuntary

- 3 -

manslaughter, the least degree of the offense. The State concedes that the verdict form contained an error but maintains that the error was merely clerical and did not affect Barnett's substantial rights.

## 1. Standard of Review

{¶ 11} Barnett failed to raise an objection to the verdict form for Count Two, so he forfeited all but plain error on appeal. *See State v. Mays*, 2024-Ohio-4616, ¶ 26. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed," but "three elements must be met in order to find reversible error." *Id.* at ¶ 27. "There must [first] be a deviation from a legal rule, that deviation must be an obvious defect in the trial proceedings, and the deviation must have affected substantial rights." (Citation omitted.) *Id.* "'Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" *State v. Nicholson*, 2024-Ohio-604, ¶ 114, quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

## 2. Whether R.C. 2945.75 Applies to Involuntary Manslaughter

{¶ 12} Before applying R.C. 2945.75 to this case, we must first determine whether the statute applies to involuntary manslaughter at all.

{¶ 13} The involuntary-manslaughter statute, R.C. 2903.04, pertinently provides:

> (A) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony.

> (B) No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor . . . .

> (C) Whoever violates this section is guilty of involuntary manslaughter. Violation of division (A) of this section is a felony of the first degree. Violation of division (B) of this

section is a felony of the third degree.

The statute creates two different forms of involuntary manslaughter. Division (A) prohibits causing death as a proximate result of committing or attempting to commit a felony, and a violation constitutes a first-degree felony. Division (B) prohibits causing death as a proximate result of committing or attempting to commit a misdemeanor or certain other lesser offenses, and a violation constitutes a third-degree felony.

{¶ 14} R.C. 2945.75 addresses the requirements for verdict forms when an offense may be charged at different degrees. The statute pertinently provides:

> (A) When the presence of one or more additional elements makes an offense one of more serious degree:
>
> . . .
>
> (2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged.

{¶ 15} The statute applies only "[w]hen the presence of one or more additional elements makes an offense one of more serious degree." R.C. 2945.75(A). So the key question is whether the predicate felony in division (A) of the involuntary-manslaughter statute, as opposed to the predicate misdemeanor in division (B), operates as an "additional element" that "makes an offense one of more serious degree" within the meaning of R.C. 2945.75(A), or whether it constitutes an essential element that defines a distinct offense.

{¶ 16} Neither party briefed this issue. The State conceded that the verdict form failed to satisfy R.C. 2945.75 and argued only that the error was clerical and subject to plain-error review. Barnett assumed that R.C. 2945.75 governed. But whether a statute applies to the facts of a case is a legal question that an appellate court may address

regardless of whether the parties have raised it. Appellate courts are not bound by the parties' agreement on matters of law and may determine the correct legal framework to apply. The applicability of R.C. 2945.75(A) is a pure question of statutory interpretation, which is a question of law.

### i. Distinct Offense Versus Additional Enhancing Element

{¶ 17} R.C. 2945.75(A) governs only cases in which an "additional element" elevates the degree of the same offense (an "Additional Enhancing Element"). *See State v. Armbruster*, 2024-Ohio-2763, ¶ 70 (12th Dist.) (Powell, J., concurring in part and dissenting in part). It does not reach cases in which the legislature has defined separate offenses with their own elements (each a "Distinct Offense").

{¶ 18} The Ohio Supreme Court's decision in *State v. Eafford*, 2012-Ohio-2224, shows how to distinguish Additional Enhancing Elements from Distinct Offenses. In *Eafford*, the defendant was convicted and sentenced for felony possession of cocaine. *Id*. at ¶ 1. The Eighth District Court of Appeals vacated Eafford's felony conviction under R.C. 2945.75(A), holding that he was convicted of misdemeanor possession of drugs only because the jury-verdict form failed to state the degree of the offense or to specify that Eafford had possessed cocaine.

{¶ 19} The State appealed to the Ohio Supreme Court, arguing that because the indictment, evidence, and jury instructions all concerned cocaine, the verdict must have encompassed possession of cocaine as a fifth-degree felony. The Court concluded that the identity of the drug is an essential element of a possession offense. *Id.* at ¶ 13-15. "In other words, possession of cocaine is a distinct offense and not an enhanced specie[s] of possession of drugs." *Armbruster* at ¶ 70 (Powell, J., concurring in part and dissenting in part), citing *Eafford* at ¶ 15. In short, the identity of the drug defines a Distinct Offense.

{¶ 20} Decisions from other Ohio appellate courts support this understanding. In

- 6 -

*State v. Howze*, 2024-Ohio-5447, ¶ 56-60 (7th Dist.), the Seventh District addressed whether R.C. 2945.75(A) applied to aggravated possession of drugs where the verdict form did not specify that methamphetamine is a Schedule II controlled substance. The appellate court noted that the case did not involve an additional enhancing element because methamphetamine possession is a distinct offense under R.C. 2925.11(C)(1) ("aggravated possession of drugs"), rather than an enhanced form of general drug possession ("possession of drugs"). Similarly, in *State v. Cunningham*, 2020-Ohio-3586, ¶ 27 (8th Dist.), the Eighth District addressed a verdict form for corrupting another with drugs that failed to specify heroin as the controlled substance. The appellate court concluded that R.C. 2945.75(A) did not apply because "'it is not an additional element that changes the degree of the offense; it is the statutorily classified character of the drug involved.'" *Cunningham* at ¶ 27, quoting *State v. Emerson*, 2016-Ohio-8509, ¶ 15 (2d Dist.).

### ii. The *Pelfrey* Distinction

{¶ 21} The Ohio Supreme Court in *Eafford* distinguished its earlier decision in *State v. Pelfrey*, 2007-Ohio-256. In *Pelfrey*, the defendant was convicted of tampering with government records. Tampering with records is ordinarily a first-degree misdemeanor under R.C. 2913.42(B)(2)(a), but the offense becomes a third-degree felony when "the writing, data, computer software, or record is kept by or belongs to a local, state, or federal governmental entity." R.C. 2913.42(B)(4). The Court held that the governmental nature of the records constituted an Additional Enhancing Element subject to R.C. 2945.75(A), not a Distinct Offense. The Court emphasized that "Pelfrey's offense of tampering with records would have constituted a misdemeanor under R.C. 2913.42(B)(2)(a) but for the additional element that the records at issue were government records." *Pelfrey* at ¶ 13.

{¶ 22} Contrast *Eafford* with *Pelfrey*. In *Pelfrey*, the defendant committed the same underlying criminal act, tampering with records, but the governmental character of those records elevated the offense from a misdemeanor to a felony. The defendant's conduct was identical regardless of whether the records were governmental—only the penalty changed. But in *Eafford*, possession of cocaine and possession of Schedule III, IV, or V substances are entirely Distinct Offenses with different elements, even though both fall under R.C. 2925.11. The identity of the controlled substance defines which offense has been committed.

### iii. Comparing Involuntary Manslaughter to Other Offenses

{¶ 23} To determine whether involuntary manslaughter follows *Pelfrey* or *Eafford*, we examine the statutory structure and compare it to other offenses that Ohio courts have analyzed under R.C. 2945.75(A).

{¶ 24} R.C. 2903.11, the felonious-assault statute, provides an example of an Additional Enhancing Element. Division (D)(1)(a) of the statute states that felonious assault "is a felony of the second degree" but then provides: "If the victim of a violation of division (A) of this section is a peace officer or an investigator of the bureau of criminal identification and investigation, felonious assault is a felony of the first degree." The offense remains felonious assault either way. The identity of the victim as a peace officer is a circumstance that increases the degree. This structure plainly falls within R.C. 2945.75(A)'s scope. *See Armbruster*, 2024-Ohio-2763, at ¶ 74 (12th Dist.) (Powell, J., concurring in part and dissenting in part).

{¶ 25} Similarly, R.C. 2919.27, the protection-order-violation statute, defines a single offense and enumerates circumstances that function as Additional Enhancing Elements. The basic offense of violating a protection order is a first-degree misdemeanor. R.C. 2919.27(B)(2). But the offense becomes a fifth-degree felony if the offender has

certain prior convictions, R.C. 2919.27(B)(3), and a third-degree felony "if the offender violates a protection order or consent agreement while committing a felony offense," R.C. 2919.27(B)(4). The Ohio Supreme Court in *Mays*, 2024-Ohio-4616, at ¶ 13-14, considered this statute and recognized that R.C. 2945.75(A) applies in such cases because the prior convictions and the commission of a concurrent felony offense are Additional Enhancing Elements that elevate the degree of the same offense.

{¶ 26} R.C. 2921.331, the failure-to-comply statute at issue in our recent decision in *State v. Palma*, 2025-Ohio-1318 (12th Dist.), follows the same pattern. That statute creates a single conduct prohibition in division (A), and the penalty provision in division (C)(5) contains an Additional Enhancing Element that increases the offense level from a first-degree misdemeanor to a third-degree felony if the offender's operation of a motor vehicle "caused a substantial risk of serious physical harm to persons or property." The Additional Enhancing Element does not define a Distinct Offense. Rather, it enhances the penalty for the same offense of fleeing a police officer. We accordingly applied R.C. 2945.75 to the verdict form. *Palma* at ¶ 18-21.

{¶ 27} The common feature running through felonious assault, protection-order violations, and failure to comply is that each statute creates a single conduct prohibition, and the Additional Enhancing Element operates on that single prohibition to increase the penalty. But the structure of the involuntary-manslaughter statute is different.

{¶ 28} The Seventh District's decision in *State v. Thomas*, 2021-Ohio-2350 (7th Dist.), shows why. In *Thomas*, the court addressed R.C. 2911.12, the burglary statute, which contains in division (A) three ways of committing "burglary," a second- or third-degree felony, and in division (B) the separate offense of "trespass in a habitation when a person is present or likely to be present," a felony of the fourth degree. The court concluded that the offense in division (B) was not a lesser degree of burglary but a

different offense altogether. *Thomas* at ¶ 33. Importantly, *Thomas* recognized that R.C. 2945.75 "'applies to different degree levels within "an offense," not to different offenses altogether.'" *Id.*, quoting *State v. Evans*, 2015-Ohio-3161, ¶ 11 (2d Dist.). The court applied R.C. 2945.75 to distinguish between second- and third-degree burglary within division (A), where Additional Enhancing Elements elevated the same offense. But the court refused to extend the statute to the Distinct Offense defined in division (B). *Id.* at ¶ 27-35.

{¶ 29} *Thomas* thus shows that a single statute can contain both degrees of the same offense—where R.C. 2945.75 applies—and Distinct Offenses—where it does not. The question is whether the varying element is an Additional Enhancing Element that changes the degree of a single offense or an essential element that defines a Distinct Offense.

### iv. Involuntary Manslaughter: Essential Elements Defining Distinct Offenses

{¶ 30} The involuntary-manslaughter statute, R.C. 2903.04, does not establish a single base offense that is enhanced by additional circumstances. Instead, it creates two separate prohibitions with different elements from the outset. Division (A) of the statute prohibits causing death "as a proximate result of the offender's committing or attempting to commit a felony." Division (B) prohibits causing death "as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor." These are not the same criminal act distinguished only by aggravating circumstances. They are different forms of culpable conduct altogether.

{¶ 31} The predicate offense, whether felony or misdemeanor, is part of the prohibited act itself. The statute does not say "no person shall cause death" with an enhancement for deaths resulting from felonies. Rather, it separately prohibits causing death through commission of a felony and causing death through commission of a

misdemeanor. Each prohibition stands independently with its own elements. Several features of the statute show that divisions (A) and (B) create separate offenses rather than degrees of the same offense.

{¶ 32} As we said, the statutory structure creates separate prohibitions. Divisions (A) and (B) each begin with "No person shall," creating different prohibitions on conduct. This is the critical feature. In R.C. 2919.27 (protection-order violation), by contrast, the single conduct prohibition appears in division (A) ("No person shall recklessly violate the terms of" a protection order), and division (B) then assigns different penalties based on Additional Enhancing Elements (aggravating circumstances). The same is true for R.C. 2921.331 (failure to comply), where division (A) creates a single prohibition and division (C)(5) enhances the penalty based on the risk of harm caused. In those statutes, the Additional Enhancing Elements operate on a single prohibition (i.e., single offense). But in the manslaughter statute, divisions (A) and (B) contain separate and independent prohibitions, each defining different conduct. Division (C) then states, "Whoever violates this section is guilty of involuntary manslaughter," followed by separate penalty provisions for "[v]iolation of division (A)" and "[v]iolation of division (B)." The language structure in R.C. 2903.04 mirrors that in R.C. 2925.11 (drug possession), where *Eafford* found Distinct Offenses.

{¶ 33} Also, the predicate felony or misdemeanor is a Distinct Offense. Trafficking in fentanyl, the predicate felony in this case, contains its own elements, culpable mental state, and penalties. It can be prosecuted independently of any resulting death. This differs from circumstances like "victim is a peace officer" in felonious assault, which is not itself a Distinct Offense.

{¶ 34} In addition, the felony/misdemeanor distinction reflects different types of culpability. The legislature apparently determined that causing death through inherently

more dangerous conduct (felonies) warrants first-degree penalties, while causing death through less dangerous conduct (misdemeanors) warrants third-degree penalties. These are not different punishments for the same wrong. Rather, they indicate that the two forms of involuntary manslaughter are different wrongs that share the same result.

{¶ 35} Lastly, "proximate result of committing a felony" describes an essential element of a Distinct Offense. The felony is not an add-on to a base involuntary-manslaughter offense. Instead, it is critical to defining which specific prohibition in R.C. 2903.04 applies.

### v. The Analogy to Drug-Possession Offenses

{¶ 36} Looking at the parallel to drug-possession offenses under R.C. 2925.11 is helpful. In that context, the type of drug determines which Distinct Offense has been committed. These are Distinct Offenses with different elements. For example, R.C. 2925.11(C)(2) defines "possession of drugs" (Schedule III, IV, or V substances), while R.C. 2925.11(C)(4) defines "possession of cocaine." The type of drug determines which of several Distinct Offenses has been committed.

{¶ 37} By contrast, the amount or weight of a controlled substance operates as an Additional Enhancing Element within a single offense. R.C. 2925.11(C)(4) establishes possession of cocaine as a Distinct Offense, then provides, "The penalty for the offense shall be determined as follows," followed by subdivisions that increase the degree based on weight. The weight is an "additional element" that "makes an offense one of more serious degree" under R.C. 2945.75(A).

{¶ 38} Involuntary manslaughter under R.C. 2903.04 follows the drug-type pattern. Whether the predicate offense was a felony or a misdemeanor determines which of two separately codified prohibitions has been violated, just as whether the substance possessed was a Schedule III drug or cocaine determines which of two different offenses

has been committed. The predicate felony in R.C. 2903.04(A) is an essential element defining a Distinct Offense.

### vi. The Counterargument

{¶ 39} It could be argued that because both violations are called "involuntary manslaughter" and share the same result (death) and same causal element (proximate result), they should be treated as degrees of the same offense with the felony/misdemeanor distinction serving as an Additional Enhancing Element. We think this argument is unpersuasive for several reasons.

{¶ 40} First, this reading would stretch R.C. 2945.75 beyond the language of the statute. The statute applies when "the presence of one or more additional elements makes an offense one of more serious degree." R.C. 2945.75(A). But when the legislature creates separate conduct prohibitions in separate divisions and designates violations of each as constituting the offense, it has created multiple Distinct Offenses with the same name. It has not simply made "an offense" more serious.

{¶ 41} We acknowledge that unlike R.C. 2925.11, where the statute gives the distinct offenses different names ("possession of drugs" versus "possession of cocaine"), R.C. 2903.04(C) uses the single label "involuntary manslaughter" for violations of both divisions. But the shared label does not mean that divisions (A) and (B) define degrees of the same offense. As the Seventh District recognized in *Thomas*, the critical feature is not the name assigned in the penalty provision but whether the statute creates separate conduct prohibitions with distinct elements. *See Thomas*, 2021-Ohio-2350, at ¶ 33-35 (7th Dist.). In *Thomas*, divisions (A) and (B) of R.C. 2911.12 happened to have different names—"burglary" and "trespass in a habitation when a person is present or likely to be present." *Id.* at ¶ 34. But the court's reasoning did not turn on the naming convention. Instead, it turned on the fact that the legislature had created separate prohibitions with

distinct elements in separate divisions of the statute. *Id.* at ¶ 33. In the present case, divisions (A) and (B) of R.C. 2903.04 are similarly structured as separate prohibitions. Each begins with "No person shall" and each specifies a different type of predicate offense.

{¶ 42} Second, accepting this argument would require treating many clearly Distinct Offenses as mere degrees. Assault and felonious assault share elements and differ primarily in the severity of harm or circumstances. *Compare* R.C. 2903.13(A) (assault: "physical harm") *with* R.C. 2903.11(A)(1) (felonious assault: "serious physical harm"). But the law treats them as Distinct Offenses, not degrees of a single offense.

{¶ 43} Third, *Eafford*'s reasoning about drug offenses applies with equal force here. If possession of cocaine is a "separate offense," *Eafford*, 2012-Ohio-2224, at ¶ 15, and not an enhanced species of possession of drugs because they are codified in separate divisions despite sharing common elements, then involuntary manslaughter predicated on felony commission should be distinct from involuntary manslaughter predicated on misdemeanor commission for the same reason.

### vii. Distinguishing Elements

{¶ 44} How to distinguish essential elements of Distinct Offenses not subject to R.C. 2945.75 from Additional Enhancing Elements for the same offense subject to R.C. 2945.75, then, depends on whether the legislature created Distinct Offenses or merely included Additional Enhancing Elements of the same offense. Distinct Offenses are indicated by different statutory divisions, each designating violations as constituting an offense, with predicates defining which offense applies. Additional Enhancing Elements of the same offense are indicated by a single prohibition with specified circumstances that elevate punishment.

{¶ 45} The difference can be illustrated by comparing R.C. 2903.04 as enacted

with a hypothetical alternative. Had the legislature wanted to create a single involuntary-manslaughter offense with a felony enhancement, it could have drafted one conduct prohibition (causing death as a proximate result of committing any offense) with a penalty provision that increased the degree when the predicate was a felony. That structure, analogous to the felonious-assault, protection-order, and failure-to-comply statutes discussed above, would plainly trigger R.C. 2945.75. But the legislature did not do that. It created two separate "No person shall" prohibitions with separate violation designations in division (C).

### 3. Application to this Case

{¶ 46} Barnett was charged with violating R.C. 2903.04(A), which prohibits causing death as the proximate result of committing a felony. The indictment alleged that Compton's death "was the proximate result of Brian Conley Barnett committing or attempting to commit" either corrupting another with drugs or trafficking in drugs, both felony offenses. The jury was instructed on the elements of R.C. 2903.04(A), and the jury found Barnett guilty of the predicate felonies of corrupting another with drugs and trafficking in fentanyl.

{¶ 47} The verdict form for Count Two stated that the jury found Barnett "guilty of Involuntary Manslaughter, in violation of R.C. §2903.04(C) of the Ohio Revised Code as charged in Count Two of the Indictment." The citation to division (C) rather than division (A) was clearly erroneous, as division (C) contains only penalty provisions, not elements of the offense. Nevertheless, the verdict form referred to the indictment, which charged a violation of R.C. 2903.04(A).

{¶ 48} Because, as we have concluded, R.C. 2945.75(A) does not apply to involuntary manslaughter, the deficiency in the verdict form does not mandate entry of conviction for a "lesser degree" of the offense. Rather, the question is simply whether the

verdict, considered in context, adequately reflects the jury's finding that Barnett violated R.C. 2903.04(A). This approach is consistent with the approach used by the Ohio Supreme Court in *Eafford*. There, having concluded that the identity of the drug was an essential element rather than an additional enhancing element, the Court did not simply stop its analysis. Instead, it evaluated the verdict in context under a plain-error analysis, examining the indictment, the evidence, and the jury instructions to determine whether the verdict was adequate despite its deficiency. *Eafford*, 2012-Ohio-2224, at ¶ 17-25. While the review in *Eafford* benefited the defendant, *Eafford*'s review method is a neutral way to identify which offense the jury actually convicted on, and it can be used regardless of which party benefits from the clarification (here, the prosecution's position, maintaining Barnett's first-degree conviction). Accordingly, we follow the same approach here. Given that the jury was instructed solely on R.C. 2903.04(A), found Barnett guilty of the predicate felonies, and the verdict form referred to the charge "as charged in . . . the Indictment," we conclude that the jury's finding of guilt for first-degree involuntary manslaughter is sufficiently established.

{¶ 49} This conclusion rests on the inapplicability of R.C. 2945.75(A) to the Distinct Offenses of involuntary manslaughter predicated on the commission of a felony versus involuntary manslaughter predicated on the commission of a misdemeanor. The rule established in *Pelfrey*, prohibiting courts from looking beyond the four corners of a verdict form, applies when R.C. 2945.75 governs. *See Pelfrey*, 2007-Ohio-256, at ¶ 14. Here, the statute does not govern.

{¶ 50} Because R.C. 2945.75 does not govern the Distinct Offenses in the involuntary-manslaughter statute, the citation to division (C) rather than division (A) in the verdict form did not constitute a deviation from a legal rule within the meaning of the first prong of the plain-error standard. The verdict form was deficient in that it cited the wrong

statutory division, but that deficiency does not implicate R.C. 2945.75(A)'s automatic consequence of reduction to the least degree of the offense charged. And even assuming that the erroneous citation constituted a deviation from a legal rule, the error did not affect Barnett's substantial rights. The jury was instructed only on R.C. 2903.04(A), found Barnett guilty of the predicate felonies, and returned a verdict expressly incorporating the indictment's charge. Under these circumstances, there is no reasonable probability that the outcome of the trial would have been different.

{¶ 51} In sum, we conclude that R.C. 2945.75(A) does not apply to the Distinct Offense of involuntary manslaughter predicated on the commission of a felony, as charged in this case. The statutory structure of R.C. 2903.04, the completeness of the predicate offenses, and the analogy to drug-possession offenses under *Eafford* all support treating R.C. 2903.04(A) and (B) as Distinct Offenses rather than Additional Enhancing Elements of the same offense. The commission of a felony as opposed to a misdemeanor is not an Additional Enhancing Element but a fundamental component of the Distinct Offense under R.C. 2903.04(A). Because R.C. 2945.75(A) does not apply, the deficiency in the verdict form does not require entry of conviction for third-degree involuntary manslaughter. The verdict form's failure to specify the degree of the offense or to state that the death resulted from a felony does not trigger the statutory consequence that "a guilty verdict constitutes a finding of guilty of the least degree of the offense charged," R.C. 2945.75(A)(2).

{¶ 52} The first assignment of error is overruled.

## B. Merger of Allied Offenses

{¶ 53} The second assignment of error alleges:

> THE TRIAL COURT UNLAWFULLY PUNISHED MR. BARNETT TWICE FOR THE SAME CONDUCT WHEN IT CONVICTED HIM OF BOTH INVOLUNTARY

MANSLAUGHTER AND TRAFFICKING IN FENTANYL.

{¶ 54} In his second assignment of error, Barnett contends that the trial court erred by failing to merge his involuntary-manslaughter convictions with his conviction for trafficking in fentanyl. Barnett argues that because all offenses arose from a single drug transaction, the offenses were allied and subject to mandatory merger under R.C. 2941.25. The State responds that no merger is required because the offenses involve separate and distinct victims—Nease and Compton for involuntary manslaughter and the public at large for drug trafficking. We agree with the State.

## 1. Standard of Review

{¶ 55} We note at the outset that Barnett did not request merger at sentencing, nor did he object to the trial court's determination that the offenses did not merge. "An accused's failure to raise the issue of allied offenses of similar import in the trial court forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *State v. Rogers*, 2015-Ohio-2459, ¶ 3. Thus, Barnett must "demonstrate a reasonable probability that the convictions are for allied offenses of similar import committed with the same conduct and without a separate animus; absent that showing, [he] cannot demonstrate that the trial court's failure to inquire whether the convictions merge for purposes of sentencing was plain error." *Id.*

## 2. Governing Law

{¶ 56} Ohio's allied offense statute, R.C. 2941.25, prohibits the imposition of multiple punishments for the same criminal conduct. The statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

In *State v. Ruff*, 2015-Ohio-995, the Ohio Supreme Court established the framework for analyzing allied offenses. The Court held that offenses do not merge, and a defendant may be convicted and sentenced for multiple offenses, if any of the following is true: "(1) the offenses are dissimilar in import or significance—in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation." *Id.* at ¶ 25. If the answer to any of these inquiries is yes, multiple convictions are permissible.

{¶ 57} Critically, *Ruff* also explained that "two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23. The Court emphasized that "[a]t its heart, the allied-offense analysis is dependent upon the facts of a case because R.C. 2941.25 focuses on the defendant's conduct." *Id.* at ¶ 26.

**3. No Merger**

{¶ 58} We conclude that Barnett's involuntary-manslaughter convictions and his fentanyl-trafficking conviction do not merge because the offenses involved separate victims and caused separate, identifiable harms.

{¶ 59} This court and others have recognized that drug-trafficking offenses and offenses causing harm to specific individuals involve different victims. The victim of a drug-trafficking offense is not the particular person who purchases or consumes the drugs but the public or society as a whole. *See State v. Workman*, 2017-Ohio-2802, ¶ 23 (12th

Dist.) (stating that "the victim of the trafficking was the public at large"); *State v. Stubbs*, 2024-Ohio-839, ¶ 87 (8th Dist.) (the victim of drug trafficking offenses is "society in general"); *State v. Bontrager*, 2022-Ohio-1367, ¶ 16, 30 (4th Dist.). Involuntary manslaughter, by contrast, is an offense against the person killed. Here, Nease and Compton were the victims of the involuntary-manslaughter offenses.

{¶ 60} Barnett urges us to reject this analysis as inconsistent with *Ruff*'s mandate that merger determinations depend on the facts of each case. He argues that treating drug trafficking as having a different victim from involuntary manslaughter creates a categorical rule that drug trafficking can never merge with a person-specific offense. But offenses involving the same transaction and the same people can involve "separate victims."

{¶ 61} The allied-offense analysis in *Ruff* asks not simply whether the same individuals were incidentally involved in both offenses but whether the harm each offense is designed to address runs to the same or different victims. Drug-trafficking laws protect society from the corrosive effects of drug distribution. These harms exist regardless of whether any particular buyer suffers a fatal overdose. Involuntary-manslaughter statutes, by contrast, protect individuals from death caused by another's commission of a felony. The fact that Barnett's conduct violated both statutes means that his conduct caused multiple types of harm to multiple victims.

{¶ 62} In applying *Ruff*'s analysis to the facts of this case, we conclude that as a factual matter, the victim of Barnett's trafficking offense (the public) is different from the victims of his involuntary-manslaughter offenses (Nease and Compton). Our conclusion is a case-specific application of *Ruff*.

{¶ 63} Barnett attempts to distinguish *Workman* and *Bontrager* on factual grounds, but the principle those cases articulate applies with equal force here. In *Workman*, we

declined to merge corrupting-another-with-drugs and drug-trafficking offenses, recognizing that the offenses involved different victims. *Workman*, 2017-Ohio-2802, at ¶ 22-23 (12th Dist.). The Fourth District reached the same conclusion in *Bontrager*, holding that involuntary manslaughter and drug trafficking do not merge because they involved the decedent (manslaughter) and the public (drug trafficking). *Bontrager*, 2022-Ohio-1367 at ¶ 30. (4th Dist.).

{¶ 64} Barnett cites cases in which trial courts, often by agreement of the parties, have merged involuntary-manslaughter or corrupting-another-with-drugs offenses with drug-trafficking offenses. *See, e.g., State v. White*, 2024-Ohio-5158 (11th Dist.); *State v. Williams*, 2020-Ohio-4430 (7th Dist.). But the fact that some courts have ordered merger in particular cases does not establish that merger was legally required in those cases, especially where, as in *White*, the State agreed to merger. Such cases provide little guidance because they do not analyze the separate-victim issue that *Ruff*, *Workman*, and *Bontrager* identify as dispositive.

{¶ 65} Finally, we address Barnett's contention that the offenses were committed with the same conduct and animus. Even assuming this were true, it would not compel merger. Under *Ruff*, multiple convictions are permissible if any one of the three criteria is satisfied, namely, dissimilar import, separate commission, or separate animus. *Ruff*, 2015-Ohio-995, at ¶ 25. The criteria are disjunctive. Because Barnett's drug-trafficking and involuntary-manslaughter offenses involve separate victims and therefore are of dissimilar import, it is unnecessary to analyze whether they were committed with the same conduct or animus. *See Armbruster*, 2024-Ohio-2763, at ¶ 16 (12th Dist.) (concluding offenses need not merge because they involved separate victims without addressing whether offenses were committed with same conduct or animus).

{¶ 66} Barnett has not demonstrated a reasonable probability that his involuntary-

manslaughter and drug-trafficking convictions are allied offenses of similar import. The offenses involved separate victims and caused separate, identifiable harms. Ohio law permits punishment for both. The trial court did not err, plainly or otherwise, by declining to merge the offenses.

{¶ 67} The second assignment of error is overruled.

### III. Conclusion

{¶ 68} We have overruled the two assignments of error presented. The trial court's judgment is affirmed.

BYRNE, P.J., and SIEBERT, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Brown County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

_/s/ Matthew R. Byrne, Presiding Judge_

_/s/ Mike Powell, Judge_

_/s/ Melena S. Siebert, Judge_